IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 11-10185-JTM

ALFRED C. DUTTON,

Defendant.

MEMORANDUM AND ORDER

This matter comes before the court on defendant Alfred C. Dutton's Motion to Suppress (Dkt. Nos. 16). He originally moved to suppress evidence obtained from a search of his apartment and of his storage unit. The court held a hearing on the matter on December 15, 2011, in which Mr. Dutton indicated he intended to file a formal *Franks v. Delaware*[1] motion challenging the veracity of the search warrant affidavit for the apartment. On December 21, 2011, Mr. Dutton filed a Notice of Withdrawal (Dkt. No. 40) of the motion to suppress challenging the search of the apartment. For the following reasons, the court denies his remaining motion to suppress the search of the storage unit.

**I. The Basis for the Search Warrants**

Mr. Dutton, a military veteran, has been preparing for the economic collapse of the world.

[1] 438 U.S. 154 (1978).

In addition to gathering a large supply of non-perishable items, he also has a modest collection of firearms and ammunition. And he makes fireworks. At issue here is a search executed on his storage unit located in Eureka, Kansas. Searches were also executed on his apartment and vehicle, but are not at issue here. As a result of the searches, Mr. Dutton has been charged in the Superceding Indictment with knowingly possessing destructive devices, more fully described as five incendiary bombs (Count I) and nine grenades (Count II), in violation of 26 U.S.C. §§ 5841, 5845(a)(8), (f)(1), and 5861(d).

The only source of information for the storage unit search warrant came from Joe Scott, Mr. Dutton's ex-wife's boyfriend. Mr. Scott often came to Mr. Dutton's apartment to pick up Mr. Dutton's daughter for her visitation. During these visits, Mr. Dutton and Mr. Scott discussed firearms, fireworks, and other explosives. There have been disputes between Mr. Dutton and his ex-wife Sabrina Dutton. Mr. Dutton testified that she sought sole custody of their daughter. Ms. Dutton testified that she did not seek sole custody of their daughter, but that she did request a temporary restraining order against Mr. Dutton after he threatened her.

On August 23, 2011, Mr. Scott went to the Greenwood County Sheriff's Office to tell them about the conversations he had had with Mr. Dutton. Based on Mr. Scott's information, local law enforcement officer, Captain Lumley, prepared an affidavit supporting the search warrant. *See* Dkt. No. 16, Ex. 1. The affidavit provides:

> Joe Scott came to the Greenwood county Sheriff's Office to report that Alfred Dutton Jr. possibly had explosives. Scott said that on or about August 9th of 2011 he had gone to Dutton's apartment to pick up a minor child per court visitation. While standing and talking with Dutton he produced a small cylindrical device about the size, Scott thought, of a triple A battery. Dutton asked if he knew what it was and when Joe said he didn't Dutton told him it was a fuse for a hand grenade. During their talk Dutton had said he ordered fuses from the internet and when they arrived

> and found they were what he wanted he was then going to order Grenade hulls and claymore mine hulls because the fuse worked in either one. When Scott went to pick up the child on August 16th Dutton told him that he could not find the black powder he needed that [sic] to complete the devices and had to order it from Cabela's website on the internet. Scott said when Dutton told him that he ordered the black powder he became concerned for safety reasons of the minor child and public safety of the residents around him in the apartment complex. Scott gave me a package of 20foot safety fuse and told me that Dutton had given it to him just after July 4th of 2010 to "blow stuff up" if he ever needed to, Scott has become concerned because Dutton told him when the government starts to round up citizens he will be one of the first because of his military background. While Scott was in the office I had him fill out a statement form.
>
> While still at the office I asked Scott if he would recognize the grenade fuse if he saw it. Scott said that he could, we searched the internet files and was unable to locate any fuse like the one that Dutton showed him. Scott had left our office to pick up the minor child from the Dutton residence, after picking her up and taking her home he returned to our office and informed me that while at the Dutton apartment Dutton asked if Scott had a drill press. Scott said that he did, Dutton advised that he would need to borrow it as he needed to drill and tap the grenade bodies so that he could plug them.
>
> Based on these facts I believe that Alfred Dutton Jr. has acquired items needed to build an Improvised explosive device for himself at his apartment or possibly in his storage unit.

*Id.*[2] Captain Lumley and Agent Neil Tierney of the Bureau of Alcohol, Tobacco, and Firearms executed the search warrant. At the hearing, Captain Lumley and Agent Tierney testified that they thought the warrant was valid, believed it was based on probable cause, and executed the warrant in a good faith belief that it was based on probable cause. Captain Lumley specifically testified that he had no reservations about Mr. Scott's reliability. And did not recall remember anything in his conversation with the magistrate judge that concerned him regarding the validity of the warrant.

---

[2] At the hearing Mr. Dutton testified that he did not show Mr. Scott a fuse from a hand grenade, and that he did not discuss building grenades or claymore mines with him. Further, he testified he never asked Mr. Scott to borrow a drill press so that he could drill grenade bodies. Mr. Dutton also testified that he was seeking black powder so he could give some to Mr. Scott in trade for the ability to shoot his black-powder rifle.

**II. Legal Conclusions**

*A. Probable Cause to Search*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. It "does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 554 (1976)). The Tenth Circuit has also recognized that people have a reasonable expectation of privacy in a storage unit because storage units are areas that "command a high degree of privacy." *See United States v. Salinas-Cano*, 959 F.2d 861, 864 (10th Cir. 1992).

"A magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The magistrate judge's decision is entitled to "great deference." *Id.* This court asks only whether, "under the totality of the circumstances presented in the affidavit, the magistrate judge had a 'substantial basis' for determining that probable cause existed." *Id.* (quoting *Gates*, 462 U.S. at 238-39).

*B. Mr. Scott's Information Provided Sufficient Probable Cause to Search the Storage Unit*

First, Mr. Dutton challenges the search of his storage unit arguing the search warrant was not

supported by probable cause because Mr. Scott was an informant and the information he provided was uncorroborated. When an anonymous or confidential informant provides the information supporting probable cause, this court also uses a totality of the circumstances test. *Artez*, 389 F.3d at 1111. An informant's "'veracity, reliability, and basis of knowledge are all highly relevant in determining the value of this report.'" *Id.* (quoting *Gates*, 462 U.S. at 230). But "'a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" *Id.* (quoting *Gates*, 462 U.S. at 233). "Specifically, '[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.'" *Id.* (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir.2000)).

Here, there was no independent corroboration of Mr. Scott's information. But Mr. Scott is a named citizen informant, unlike an anonymous or confidential informant whose identity is either unknown or undisclosed. *See United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002) ("[C]itizen-informants are presumed to be reliable.") (citing *J.B. v. Washington County*, 127 F.3d 919, 930 (10th Cir. 1997)); *see also United States v. Downes*, No. 00-40084-01, 2001 WL 121951, at *4 (D. Kan. Jan. 12, 2001) ("A presumption of reliability attaches to [Mr. Scott's] statements without independent corroboration.") (alterations added). The affidavit explained the basis for Mr. Scott's knowledge—that he had seen the grenade fuse and talked about grenades with Mr. Dutton on more than one occasion. Additionally, the affidavit provides that Mr. Dutton told Mr. Scott he had ordered black powder, and Mr. Dutton asked to borrow a drill press so he could drill and plug the grenade bodies. This provides supporting evidence that Mr. Dutton did in fact have explosive devices. The affidavit also provides the location and dates of the conversations and observations.

It is true that Mr. Scott is Mr. Dutton's ex-wife's boyfriend; and, Mr. Dutton hints that this is a basis for Mr. Scott's unreliability or an ulterior motive. But this fact alone does not make Mr. Scott's information unreliable. Therefore, the search warrant did not lack probable cause simply because the information was obtained from Mr. Scott.

*C. The Affidavit Contained Sufficient Information Supporting Probable Cause to Search the Storage Unit*

Last, Mr. Dutton argues the information provided by Mr. Scott did not provide probable cause to support a search of the storage unit because there was no nexus between the area searched and the items sought. Mr. Scott never mentioned a storage unit. The only reference to the storage unit is in the last sentence of the search warrant affidavit in which Captain Lumley states, "[b]ased on these facts I believe that Alfred Dutton Jr. has acquired items needed to build an Improvised explosive device for himself at his apartment or possibly in his storage unit." Dkt. No. 16, Ex. 1. The government argues the conversations and observations by Mr. Scott show that Mr. Dutton was making explosive devices and the affidavit does not need to contain personal knowledge that the items sought would be found in the storage unit.

"A nexus between the objects to be seized and the place to be searched for them is established when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be searched." *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). "There need not be direct evidence or personal knowledge that the items sought are located at the place to be searched, and we have recognized that courts often rely on the opinion of police officers as to where contraband may be kept." *Id.*; *see also*

*United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) ("[W]e [Tenth Circuit have] said that when police officers have probable cause to believe that a suspect is involved in drug distribution, there is also probable cause to believe that additional evidence of drug-trafficking crimes (such as drug paraphernalia or sales records) will be found in his residence."). "Certain non-exhaustive factors relevant to our nexus analysis include (1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009).

While close, the affidavit meets this low standard. The conversations and observations occurred at Mr. Dutton's apartment. Although the affidavit does not mention that Mr. Scott had personal knowledge that any explosives were in the storage unit, personal knowledge that explosive devices would be found in the storage unit is unnecessary. *See Hargus*, 128 F.3d at 1362. Like a home or residence in a drug distribution case, it is reasonable to presume that if Mr. Dutton was building explosive devices in his home he also stored them in his storage unit. *See Sanchez*, 555 F.3d at 914. Regardless, even if the affidavit was not sufficient to support probable cause, the officers executed the warrant on the good faith belief that it was valid.

*D. The Leon Good-Faith Exception Applies to the Search of the Storage Unit*

Even if the search of the storage unit was not supported by probable cause, the evidence seized need not be suppressed if Captain Lumley acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate. *See United States v. Leon*, 468 U.S. 897, 922 (1984). In *Leon*, the Supreme Court recognized four situations in which an officer would not have

reasonable grounds for believing a warrant was properly issued. *Id.* at 922-23. If any of these situations is present, the good-faith exception to the exclusionary rule does not apply. *See id.* First, evidence should be suppressed if the issuing judge was misled by an affidavit containing false information or information the affiant would have known was false had it not been for his "reckless disregard of the truth." *Id.* at 923. Second, the exception does not apply when the "issuing magistrate wholly abandon[s] his [or her] judicial role." *Id.* (alterations added). Third, if the supporting affidavit is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" the exception does not apply. *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). Fourth, the exception is inapplicable when the warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *Id.* Mr. Dutton argues the first, third, and fourth situations apply here.

Mr. Dutton first argues the judge was misled by false information, or information Captain Lumley should have known was false. Yet Mr. Dutton cannot show that the affidavit included false information, and he does not attempt to do so. Thus, this ground does not apply. Next, and collectively, Mr. Dutton argues the supporting affidavit was so lacking in probable cause that Captain Lumley could not have reasonably believed the warrant was valid. This court disagrees. Although the affidavit supporting the search of the storage unit did not specifically state that Mr. Dutton was building or storing explosive devices in the storage unit, it provided sufficient facts to support probable cause to search the storage unit, and it was not so lacking in an indicia of probable cause that Captain Lumley should have known the search was illegal. The absence of any direct information articulated in the affidavit indicating the items sought would be found in the storage unit does not preclude Captain Lumley from holding a reasonable belief that those items would be

found in the storage unit. *See United States v. Sparks*, 291 F.3d 683, 689 (10th Cir. 2002). Given the nature of the evidence, it was reasonable for Captain Lumley to conclude that Mr. Dutton may have stored the explosive devices in the storage unit. *See Biglow*, 562 F.3d at 1279. In fact, the affidavit contained detailed information supporting probable cause to support a search of the apartment based on more than conclusory statements about Mr. Scott's knowledge of Mr. Dutton's potential criminal activity. Therefore, even if not supported by probable cause, the search of the storage unit was executed under a good faith belief that evidence of explosives would be found therein. *See Leon*, 468 U.S. at 926. Thus, the evidence seized at the storage unit will not be suppressed.

IT IS ACCORDINGLY ORDERED this 23rd day of December 2011, that Alfred C. Dutton's Motion to Suppress (Dkt. No. 16) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE