IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

The United States of America,
    Plaintiff,

vs.                                    Case No. 11-10185-01-JTM

Alfred C. Dutton,
    Defendant.

MEMORANDUM AND ORDER

The court has before it defendant Alfred Dutton's Motion for Judgment of Acquittal (Dkt. 122). The court denies the Motion for the following reasons.

**I. Background**

On September 14, 2011, the grand jury returned a one count indictment charging Dutton with the unlawful possession of destructive devices, specifically that he possessed "one or more grenade bodies and the necessary combination of parts either designed or intended for use in converting any device into a destructive device." Dkt. 24. Trial of this matter commenced on July 16, 2013, with the government resting on July 17, 2013, after which Dutton presented his evidence. The jury was duly instructed by the court on the law of the matter. On July 18, 2013, a verdict of guilty was returned, finding Dutton guilty of the offense charged.

1

Dutton filed this motion on July 22, 2013, well within the fourteen-day deadline set out in FED. R. CRIM. P. 29(c), arguing that the court should enter a judgment of acquittal based on an insufficiency of evidence.

**II. Legal Standard:**

"In reviewing the sufficiency of the evidence in a criminal case, the evidence—both direct and circumstantial, together with reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Morales*, 108 F.3d 1213, 1221 (10th Cir. 1997) (citing *United States v. Sanders*, 929 F.2d 1466, 1470 (10th Cir. 1991)). "The evidence presented to support a conviction must be substantial; it must do more than raise a mere suspicion of guilt." *Id.* (internal quotation marks omitted). A conviction should be reversed only when "no reasonable juror could have reached the disputed verdict." *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997) (citation omitted).

**III. Analysis**

The jury in this case convicted Dutton of possessing one or more grenade bodies and the necessary combination of parts either designed or intended for use in converting any device into a destructive device, in violation of 26 U.S.C. §§ 5841, 5845(a), 5845(f), and 5861(d), with reference to § 5871. The court instructed the jury that a destructive device was:

1) A grenade or

> 2) Any combination of parts either designed or intended for use in converting any device into a grenade and from which a grenade may be readily assembled.

*See* Dkt. 116, Jury Instruction Number 13. The court further instructed the jury that in order to find the defendant guilty, the government had to prove each of the following elements beyond a reasonable doubt:

> First: the defendant knowingly possessed one or more destructive devices;
>
> Second: the defendant knew of the specific characteristics or features of the destructive devices that caused them to be registerable under the National Firearms Registration and Transfer Record;
>
> Third: the destructive devices were in operating condition or could readily have been put in operating condition; and
>
> Fourth: the destructive devices were not registered to the defendant in the National Firearms Registration and Transfer Record. The government is not required to prove that the defendant knew that the destructive devices were not registered or had to be registered.

*Id*. Finally, the court instructed the jury on an affirmative defense:

> It is a defense to the charge of possessing the items alleged to be destructive devices that they were neither designed nor redesigned for use as a weapon. . . . If you find that the items alleged to be destructive devices were neither designed nor redesigned to be used as weapons, then you should find the defendant not guilty.

*Id.*

In his motion for acquittal, Dutton contends the United States failed to establish beyond a reasonable doubt the first and third elements of the crime. According to Dutton, the government failed to provide any evidence that there was an igniting force that he intended to be used to readily convert the golf ball grenade bodies containing gunpowder into destructive devices.

3

At trial, Dutton admitted to purchasing five golf ball grenade bodies. He admitted that he had removed smokeless powder from Eastern European ammunition and placed the powder in the grenade bodies. Testimony from ATF agents established that each grenade body contained approximately 65 to 70 grams of the smokeless powder, and three of the grenade bodies contained other explosive chemicals mixed in with the powder, including ammonium nitrate and aluminum powder. ATF agents found the sources of these accelerants in Dutton's apartment: ammonium nitrate was found in the Cold Compress packages and aluminum powder was found in the jar of alumilite aluminum powder, each admitted into evidence.

The only remaining component necessary to make the grenade bodies into destructive devices was a means of ignition. Dutton admitted to purchasing the five live flash bang/smoke grenade fuses introduced at trial. He admitted to modifying shell cartridges and placing fuse cord in them, creating another possible ignition tool. He admitted to purchasing the fuse cord and to possessing the pistol primers found in his apartment, some of which he had used to modify a fired military grenade fuse into a live military grenade fuse that could be screwed onto the grenade bodies. To the extent that Dutton argues that the government failed to prove that he possessed grenades or the necessary components for them, the court finds that the jury had ample evidence before it to conclude that he did.

The court also finds there was sufficient evidence for the jury to find Dutton could have readily assembled these components. All of the possible means of ignition were found in Dutton's apartment in close proximity to where the grenade bodies were

located. Further, according to Explosives Enforcement Officer Gonzales's testimony at trial, when he emptied the powder from the grenade bodies, the top plug in each grenade was only finger-tightened, so it only took a couple of twists to unscrew the plug from the grenade body. After removing the plug, Dutton would have only needed to replace the plug with any one of these means of ignition. Screwing in a flash bang fuse or live military fuse would have taken just a few seconds. Inserting one of the improvised shell cartridge fuses and lighting the fuse would have been just as simple.

In his motion, Dutton essentially argues that using any of the ignition devices as fuses for the grenade bodies would have made for poor grenades. The live flash bang fuses, Dutton argues, would render the grenades only useable as suicide bombs or booby traps because they would ignite an explosion immediately rather than allowing for the delayed explosion more commonly associated with grenades. Dutton asserts that the modified shell cartridges with fuse cord inserted would have made for poor grenades because the ignition could not be fully secure, so there would be a risk that it would fall out along with the powder. Therefore, Dutton argues, no reasonable jury could find that he had the requisite intent to "design or intend" these for use as actual grenades.

But possessing low-quality grenades (or their readily assembled necessary components) is no defense. The court finds there was sufficient evidence for a reasonable jury to believe Dutton intended these grenades to be functional. Joe Scott testified that Dutton had shown him a fuse to a hand grenade and that Dutton had identified it as such. Scott testified that Dutton told him later that he had ordered some

5

black powder for some hand grenades he had ordered over the internet. Sabrina Dutton, the defendant's ex-wife, testified that Dutton had told her he had blown up one of his detonators, which left a "pretty good crater" in the ground. That the type of fuses found might render the grenades less effective than those professionally manufactured does not exclude them from being destructive devices under the law.

Intent is a difficult thing for the trier of fact to assess. A jury must use the circumstances surrounding events, as well as its common sense, to best judge what a defendant intended. The court instructed the jury that if Dutton neither designed nor redesigned these grenade bodies to be used as weapons, he was not guilty of the offense. Dutton himself testified that he was using the grenade bodies as mere storage containers for the powder that was inside rather than as grenade devices. But as the prosecution pointed out during its closing arguments, none of the grenade bodies were filled to capacity, as one might expect if they were mere containers. Rather, each grenade consistently contained 65–70 grams of powder. The court "may neither weigh conflicting evidence nor consider the credibility of witnesses." *United States v. Harrod*, 981 F.2d 1171, 1174–75 (10th Cir. 1992) (internal citation omitted). Such assessments are within the exclusive province of the jury. *United States v. Davis*, 965 F.2d 804, 811 (10th Cir. 1992).

The jury had two theories explaining the circumstances and facts before it. It is clear from the verdict that the members of the jury did not believe Dutton's explanation. Having reviewed the evidence in the light most favorable to the government, a reasonable jury could have concluded beyond a reasonable doubt that Dutton

possessed these components for the purpose of making destructive devices. The court denies the motion accordingly.

IT IS THEREFORE ORDERED this 31st day of July, 2013, that Dutton's Motion for Judgment of Acquittal (Dkt. 122) is denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE